<u>NOT FOR PUBLICATION</u>

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

CLEAN-TEX SERVICES, INC.,

    *Plaintiff*,

v.

JENSEN USA INC.,

    *Defendant.*

Civil No.: 23-cv-10853 (KSH) (MAH)

<u>OPINION</u>

<u>**Katharine S. Hayden, U.S.D.J.**</u>

**I.**    **Introduction**

This dispute is over a proposal for the sale of over $12 million in commercial laundry equipment by Jensen USA Inc. ("Jensen") to Clean-Tex Services, Inc. ("Clean-Tex"). In its complaint, Clean-Tex asserts quasi-contract and tort claims seeking the return of what it argues were refundable deposit payments it made to Jensen under the proposal before Clean-Tex terminated the relationship between the parties. Jensen has filed a counterclaim for breach of contract, arguing that when the parties signed the proposal in December 2018, it became a binding sales contract under which Clean-Tex owes Jensen an outstanding balance. Before the Court is Jensen's motion for judgment on the pleadings seeking the dismissal of Clean-Tex's claims.

**II.**    **Background**

The facts are gleaned from the parties' pleadings.[1] Clean-Tex is a commercial laundry business, and Jensen designs, manufactures, and distributes custom commercial-grade laundry

---

[1] The pleadings consist of Clean-Tex's complaint (D.E. 1), Jensen's answer and counterclaim (D.E. 13), and Clean-Tex's answer to the counterclaim (D.E. 19). *See* Fed. R. Civ. P. 7.

1

equipment.  (D.E. 1, "Compl." ¶¶ 5-6; D.E. 13 at 1-4, "Def. Ans." ¶ 6; D.E. 13 at 4-10, "Def. Countercl." ¶ 2.)

On November 6, 2018, Jensen gave Clean-Tex a proposal, titled "Irvington New Plant Budget Proposal," for the sale of customized industrial laundry equipment costing $12,891,816.  (Compl. ¶¶ 7-8; Def. Countercl. ¶¶ 14-15.)[2]  Jensen claims the parties later agreed to increase the purchase price to $13,451,066.  (Def. Ans. ¶ 8; Def. Countercl. ¶ 18.)

On December 19, 2018, Jensen President Simon Nield signed the "Signature of Acceptance" line.  (Proposal at 54.)  The next day, Clean-Tex CEO Jacob Zahler signed the acceptance line (*id.* at 54) and initialed three pages setting forth commercial terms, including some that were handwritten (*id.* at 52, 53, 96).  The proposal included this limiting language: "Exclusion of liability for loss of anticipated profit, loss of production, loss of interest, loss of business opportunities, loss of use, as well as any indirect and consequential losses and damages of any kind whatsoever."  (*Id.* at 52; Compl. ¶ 9.)

The parties agree that over the next year, Jensen periodically sent invoices to Clean-Tex for the manufacture and delivery of the equipment.  Clean-Tex disputes the accuracy of those invoices.  (Def. Countercl. ¶¶ 17, 19; D.E. 19, "Plf. Ans." ¶¶ 17, 19.)  Clean-Tex paid Jensen a total of $6,424,797—$100,000 in January 2019, $2,478,363.20 in May 2019, $1,006,854.46 in October 2019, and $2,839,580.01 in January 2020.  (Compl. ¶¶ 13-17; Def. Countercl. ¶ 20; Plf. Ans. ¶ 20.)

---

[2] Jensen attached portions of the "Irvington New Plant Budget Proposal" as Exhibit A to its answer. (D.E. 13-1, Def. Ans. Ex. A, "Proposal".)  The exhibit includes the title page, three pages of commercial terms, and a signed "Signature of Acceptance" page.  The Court may properly consider Exhibit A in deciding this motion for judgment on the pleadings because it is an exhibit attached to a pleading and it is a document integral to and relied upon in the complaint.  *See Valeant Pharms. Int'l, Inc. v. AIG Ins. Co. of Canada*, 625 F. Supp. 3d 309, 314 (D.N.J. 2022) (Shipp, J.).

In January 2020, Jensen asked Clean-Tex for permission to add a cancellation and termination clause, which Clean-Tex declined. (Compl. ¶¶ 11-12; Def. Ans. ¶¶ 11-12.)

On March 18, 2020, Jensen issued Clean-Tex another invoice for $1,062,301.40. (Def. Countercl. ¶ 21.) Clean-Tex did not pay it. In July 2020, Clean-Tex sought to terminate the parties' relationship and demanded the return of the $6,424,797 it had already paid Jensen. (Compl. ¶ 18.) Jensen demanded Clean-Tex pay the outstanding invoice balance for the sale of the equipment. (Def. Countercl. ¶ 30.) Jensen later modified and sold the equipment it had custom-made for Clean-Tex to third party companies for $5,619,338 in a purported effort to mitigate its losses. (Def. Countercl. ¶¶ 32-33, 35-36.) Clean-Tex denies Jensen's claim that it was notified about the sale. (Def. Countercl. ¶ 34; Plf. Ans. ¶ 34.)

Jensen's counterclaim asserts that Clean-Tex's nonpayment constituted a default of Clean-Tex's payment obligations under the parties' December 2018 signed contract. (Def. Ans. ¶¶ 17, 19; Def. Countercl. ¶ 22.) In its complaint, Clean-Tex asserts, however, that it was not required to make any payments under the 2018 contract *proposal*, that the proposal was nonbinding and could be cancelled at any time without cost, and that the payments Clean-Tex had made were refundable deposits. (Compl. ¶¶ 10, 17-20.)

### III.    Procedural History

On August 25, 2023, Clean-Tex filed a complaint (D.E. 1) in this Court against Jensen asserting claims for money had and received (count 1), unjust enrichment (count 2), and conversion (count 3) and seeking compensatory damages of $6,424,797 plus interest, punitive damages of over $500,000, costs and fees, and any other proper relief.[3] On October 10, 2023,

---

[3] The complaint is properly before this Court under diversity jurisdiction because Clean-Tex is a New Jersey corporation with its principal place of business in New Jersey, Jensen is a North

3

Jensen filed an answer (D.E. 13 at 1-4) with a counterclaim (*id.* at 4-10) for breach of contract alleging that Clean-Tex breached the parties' contract by failing to pay the total contract price for the equipment Jensen manufactured for Clean-Tex in accordance with the contract terms. Clean-Tex answered the counterclaim on November 14, 2023. (D.E. 19.)

Jensen is seeking dismissal of the claims in Clean-Tex's complaint under Fed. R. Civ. P. 12(c) because they are quasi-contractual and tort claims that are precluded as a matter of law by the existence of a binding contract. (D.E. 22.) Clean-Tex opposes (D.E. 24), arguing the parties never entered a binding contract and, if the Court grants Jensen's motion, asking for leave to file the attached amended complaint (D.E. 25) pursuant to Fed. R. Civ. P. 15(a)(2). In its reply (D.E. 26), Jensen argues the request to file an amended complaint is procedurally defective under L. Civ. R. 15.1 and Fed. R. Civ. P. 6(c).

## IV. Standard of Review

Fed. R. Civ. P. 12(c) permits motions for judgment on the pleadings to be made "[a]fter the pleadings are closed—but early enough not to delay trial." The pleadings are "considered to be 'closed' after the complaint and answer have been filed, along with any reply to additional claims asserted in the answer." *Liberty Int'l Underwriters Canada v. Scottsdale Ins. Co.*, 955 F. Supp. 2d 317, 323 (D.N.J. 2013) (Hillman, J.).

The Court analyzes a motion for judgment on the pleadings for failure to state a claim "under the same standards that apply to a Rule 12(b)(6) motion." *Zimmerman v. Corbett*, 873 F.3d 414, 417 (3d Cir. 2017) (cleaned up). When the motion is brought by the defendant, the Court must accept all the well-pleaded factual allegations in the plaintiff's complaint as true and draw

---

Carolina corporation with is principal place of business in Florida, and the amount in controversy exceeds $75,000. (Compl. ¶¶ 1, 4.)

4

all reasonable inferences in favor of the plaintiff. *Bibbs v. Trans Union LLC*, 43 F.4th 331, 339 (3d Cir. 2022) (cleaned up). The motion will be granted if the pleadings clearly show that "no material issue of fact remains to be resolved" and the defendant "is entitled to judgment as a matter of law" because "there is no reasonable reading upon which the plaintiff may be entitled to relief." *Mid-Am. Salt, LLC v. Morris Cnty. Coop. Pricing Council*, 964 F.3d 218, 226 (3d Cir. 2020) (cleaned up). A plaintiff can survive a defendant's Rule 12(c) motion if the complaint contains "sufficient factual matter to show that the claim is facially plausible, thus enabling the court to draw the reasonable inference that the defendant is liable for [the] misconduct alleged." *Bibbs*, 43 F.4th at 339.

As with a Rule 12(b)(6) motion, the Court is generally confined to the pleadings in ruling on a Rule 12(c) motion for judgment on the pleadings. *See* Fed. R. Civ. P. 12(d); *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997). The Court, however, may also consider the exhibits attached to the pleadings, documents attached to the motion if they are indisputably authentic and integral to or relied upon in the complaint, or matters of public record. *Valeant Pharms. Int'l, Inc. v. AIG Ins. Co. of Canada*, 625 F. Supp. 3d 309, 314 (D.N.J. 2022) (Shipp, J.).

V. **Discussion**

The parties agree that Florida law applies to this dispute because it is governed by a choice-of-law provision. *See* Def. Ans. Ex. A at 96 ¶ XI ("The contract shall be governed by the laws of the State of Florida.").

Clean-Tex brings two claims based on quasi-contract theories—money had and received and unjust enrichment—which, under Florida law, are "largely different names for the same remedy." *Francois v. Hatami*, 565 F. Supp. 3d 1259, 1270 (S.D. Fla. 2021). Both claims require

5

the plaintiff to allege that (1) "the plaintiff conferred a benefit on the defendant"; (2) "the defendant voluntarily accepted and retained that benefit"; and (3) "the circumstances are such that it would be inequitable for the defendant to retain the benefit without paying the value thereof to the plaintiff." *Id.* at 1269 (cleaned up).

Florida courts view these claims as legal remedies that "necessarily call[] upon the Court to imply a contractual obligation where there otherwise is none." *Berry v. Budget Rent a Car Sys.*, 497 F. Supp. 2d 1361, 1369 (S.D. Fla. 2007). Thus, "the presence of an express contract" that "directly addresses the matter complained of" will preclude a claim for unjust enrichment or money had and received. *Id.* at 1369-70. However, a plaintiff may plead "inconsistent yet alternative forms of relief," and dismissal of the quasi-contractual claim will only be appropriate once an express contract has been proven. *Francois*, 565 F. Supp. at 1270.

Clean-Tex also brings a tort claim for conversion. Under Florida law, conversion is an unauthorized act that deprives another of his property permanently or for an indefinite time. *Tambourine Comercio Int'l S.A. v. Solowsky*, 312 Fed. App'x 263, 271 (11th Cir. 2009). When there is a contractual relationship between the parties, a conversion claim "must go beyond, and be independent from, a failure to comply with the terms of a contract." *Gasparini v. Pordomingo*, 972 So. 2d 1053, 1055 (Fla. Dist. Ct. App. 2008). For money to be "the object of conversion," the plaintiff must show that the defendant intentionally received a specific and identifiable sum of money, knew it had an obligation to hold it and keep it intact for the plaintiff, and refused to deliver it to the plaintiff. *Tambourine*, 312 Fed. App'x at 272; *see, e.g.*, *Masvidal v. Ochoa*, 505 So. 2d 555, 556 (Fla. Dist. Ct. App. 1987) (holding that defendant committed conversion by "lawfully obtain[ing] possession of the plaintiff's funds to set up an escrow fund and thereafter convert[ing]

6

the funds for his own use"). A conversation claim will fail as a matter of law when a defendant who received funds "had every right to do with them as it pleased." *Gasparini*, 972 So. 2d at 1056.

## VI. Analysis

All three of Clean-Tex's claims against Jensen turn on two questions: (1) whether the "Irvington New Plant Budget Proposal" was a binding contract and (2) whether that contract governed Clean-Tex's payment of approximately $6.4 million to Jensen in 2019 and 2020 such that it precludes quasi-contract or tort claims involving those same payments.

State law governs the first question of whether a contract exists. *Solymar Invs., Ltd. v. Banco Santander S.A.*, 672 F.3d 981, 991 (11th Cir. 2012). Because this dispute involves the sale of goods, the Uniform Commercial Code (UCC) as adopted in Florida applies. *See* Fla. Stat. § 672.102. It states that a contract "may be made in any manner sufficient to show agreement, including conduct by both parties which recognizes the existence of such a contract." § 672.204. The Court agrees with Jensen's argument that the proposal became a binding and enforceable contract when both parties signed it on December 19 and 20, 2018. *See Gateway Cable T.V., Inc. v. Vikoa Constr. Corp.*, 253 So. 2d 461, 463 (Fla. Dist. Ct. App. 1971) ("The object of a signature is to show mutuality or assent."). Additionally, and significantly, Clean-Tex acknowledged in its answer to the counterclaim that a contract existed between the parties. (*See* Plf. Ans. ¶ 9 ("With respect to the allegations contained in paragraph '9' of the counterclaims, admits the parties entered into a contract and refers the Court to that document for its precise terms and legal effect.").)

But the answer to the second question is less certain, especially because the Court has only been provided with four pages of at least a 96-page contract. What has been given does not indicate if Clean-Tex's payments were considered refundable deposits or nonrefundable

contributions towards a total purchase price. As such, this record lacks sufficient clarity to determine whether the contract precludes Clean-Tex's claims as a matter of law.

Clean-Tex's quasi-contract claims for money had and received and unjust enrichment are facially plausible based on the facts alleged—namely, that Clean-Tex conferred a benefit on Jensen by paying it over $6 million, that Jensen kept the payments received, and that the parties understood that the agreement could be canceled at any time, requiring the deposit payments to be returned. Allowing the quasi-contract claims to proceed is appropriate because, although the existence of an express contract has been proven, it is unclear from the gaps in the record whether the contract "directly addresses the matter complained of." *See Berry*, 497 F. Supp. 2d at 1369-70.

Clean-Tex's conversion claim is also facially plausible. The complaint alleges defendant received $6 million from Clean-Tex, had an obligation to hold it as a refundable deposit payment, and refused to return it when Clean-Tex canceled the contract. *See Tambourine*, 312 Fed. App'x at 272. With so much of the contract missing from the record, the Court cannot conclude as a matter of law that the conversion claim fails. The claim may well "go beyond, and be independent from, a failure to comply with the terms of the contract," or it may be precluded by the contract. *Gasparini*, 972 So. 2d at 1055-56.

These glaring uncertainties prevent the Court from granting the relief Jensen's motion demands. As with the other claims discussed above, the conversion claim must survive the motion for judgment on the pleadings.[4]

---

[4] Because the Court is not granting Jensen's motion for judgment on the pleadings, it need not address Clean-Tex's request to amend the complaint. Plaintiff may file a motion to amend the complaint if it so chooses under the procedural process set forth under the Federal Rules of Civil Procedure and this Court's Local Civil Rules.

## VII.   Conclusion

For the foregoing reasons, the Court denies Jensen's motion for judgment on the pleadings.  An appropriate order will follow.

Dated: August 23, 2024                                              /s/ Katharine S. Hayden
                                                                                 Katharine S. Hayden, U.S.D.J.