# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

Chambers of
**Michael A. Hammer**
United States Magistrate Judge

Martin Luther King, Jr. Federal Bldg.
& U.S. Courthouse
50 Walnut Street, Room 2042
Newark, NJ 07102
(973) 776-7858

August 31, 2026

**LETTER OPINION & ORDER**

**Re: Clean-Tex Services, Inc. v. Jensen U.S.A. Inc.**
**Civil Action No. 23-10853 (KSH) (MAH)**

Dear Litigants:

This matter comes before the Court by way of the June 29, 2026 joint discovery-dispute letter filed by the parties [D.E. 103] ("Joint Letter"). Jensen USA Inc. ("Jensen") contends that the responses of Clean-Tex Services Inc. ("Clean-Tex") to certain of Jensen's requests for admissions ("RFA") are deficient under Federal Rule of Civil Procedure 36. As a result, Jensen asks that the Court either deem those requests as admitted or require Clean-Tex to serve more specific responses.

Clean-Tex objects to Jensen's proposal. Clean-Tex represents that it exercised reasonable diligence in responding to Jensen's RFAs. Clean-Tex also contends that Jensen's position inappropriately conflates RFAs under Rule 36 with regular discovery requests, and observes that Jensen had the opportunity to depose Clean-Tex witnesses about the same issues encompassed by the RFAs and Clean-Tex's responses. Therefore, Clean-Tex asks the Court to find its responses to be sufficient under Rule 36 or, in the alternative, permit Clean-Tex to supplement its responses.

For the reasons set forth herein, the Court will require Clean-Tex to provide more specific answers to certain of Jensen requests for admissions, deem certain of Clean-Tex's responses to be adequate, and deny Jensen's request that the Court deem Clean-Tex to have admitted certain requests.[1]

[1] The parties also propose to extend deadlines for the submission of expert reports, as well as a summary judgment briefing schedule. Joint Letter at 12-13. The Court will grant the request to extend the deadlines to submit expert reports and complete expert depositions. However, the Court will direct the parties to meet and confer on whether any changes to the proposed deadlines are necessary in view of the decision herein, and to submit a jointly proposed updated form of Order by September 14, 2026. The joint submission also will include a proposed date for a status conference with the Court.

Additionally, the Court will not set a summary judgment briefing schedule at this time. Before

## I. Background

Because the Court writes principally for the benefit of the parties, it will address only the background relevant to resolving the instant dispute. Clean-Tex operates a commercial laundry. Jensen designs, manufactures and distributes commercial-grade laundry machinery. Compl., D.E. 1, at 1-4. In 2018, the parties negotiated for Jensen to supply Clean-Tex with bespoke industrial laundry equipment costing $12,891,816. Compl. ¶¶7-8; Answer & Countercl., D.E. 13, ¶¶14-15. Jensen provided a proposal, titled the "Irvington New Plant Budget Proposal," to Clean-Tex in November 2018. *Id.* According to Jensen, the parties later agreed to increase the purchase price to $13,451,066. Countercl. ¶18.

On December 19, 2018, the President of Jensen, Simon Nield, signed the acceptance line of the proposal. *See* Irvington New Plant Budget Proposal, Def. Answer, Ex. A, D.E. 13-1, at 54. On December 20, 2018, the Chief Executive Officer of Clean-Tex, Jacob Zahler, executed the acceptance line, *id.*, including initialing three pages of commercial terms, some of which were handwritten. *Id.* at 52-53, 96. The proposal included language that limited liability for certain losses and indirect and consequential damages. *Id.* at 52.

Over the next year, Jensen invoiced Clean-Tex for manufacture and delivery of the equipment. *See, e.g.*, Countercl. ¶¶19-20. Although Clean-Tex disputes the accuracy of certain invoices, there appears to be no disagreement that by January 2020, Clean-Tex had paid a total of $6,424,797 to Jensen. *Id.* ¶20; Compl. ¶¶13-17. However, Jensen asserts that Clean-Tex still has not paid an invoice issued on March 18, 2020, for $1,062,301.40. Countercl. ¶¶22. Instead, on July 7, 2020, Clean-Tex demanded return of the $6,424,797, based on the assertion that "[t]he Proposal permitted cancellation and plaintiff was not required to remit any payment to defendant." Compl. ¶20. For its part, Jensen deems Clean-Tex's termination to be a breach of contract because as of July 7, 2020, Jensen had performed its contractual obligations and Clean-Tex had no valid basis to terminate. Countercl. ¶¶26-28. Jensen demanded that Clean-Tex pay an outstanding balance of $6,095,718. *Id.* ¶¶29-30. Jensen also advised Clean-Tex that it notified Clean-Tex that failure to pay the outstanding balance would cause Jensen to seek to sell the equipment not yet delivered to Clean-Tex. *Id.* ¶¶30, 34. Clean-Tex denies receiving notice of Jensen's intention to sell the equipment. Pl. Ans. to Countercl., D.E. 19, ¶34. Jensen ultimately sold the as-yet-delivered equipment, in modified form, to third parties for $5,619,338. Countercl. ¶¶32-36.

Clean-Tex brings the following claims: Count 1 – Money Had and Received; Count 2 – Unjust Enrichment; Count 3 – Conversion. Jensen brings a single counterclaim for breach of contract. By Opinion and Order issued on October 10, 2023, the District Court denied Jensen's motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). Opinion & Order, Aug, 23, 2024, D.E.s 52-53. Fact discovery is complete, and each party anticipates

---

any summary judgment motion practice, the parties will participate in either a settlement conference with the Court, or mediation with a mutually agreeable mediator.

serving expert reports and conducting expert discovery. *See, e.g.*, Joint Letter at 12-13 (proposing new deadlines to serve expert reports and complete expert depositions).

## II. **The Dispute Concerning Jensen's Requests for Admissions**

On December 29, 2025, Jensen served twenty-four RFAs on Clean-Tex. Clean-Tex served its objections and responses on January 28, 2026. After Jensen asserted Clean-Tex's responses were inadequate, the parties conducted a series of meet-and-confer sessions. Those sessions did not produce a resolution.

There are thirteen RFAs in dispute. But the common denominator is a disagreement concerning the adequacy of Clean-Tex's responses, many of which profess to not know the answer to the request. Jensen posits that Clean-Tex's responses are inadequate, and that the answers should be deducible with reasonable diligence. *See, e.g.,* Joint Letter at 3-4. For its part, Clean-Tex mostly responds that it conducted adequate due diligence in preparing its responses, and that Jensen seeks to inappropriately use the RFAs as a fact-finding tool. *Id.* at 9. Clean-Tex also contends that Jensen had the opportunity to cover these subjects when it deposed Clean-Tex's witnesses, and will have further opportunity to raise the questions at trial. *Id.*

### A. **Legal Standard under Federal Rule of Civil Procedure 36**

It is well settled that "[a] request for admission should be such 'that it could be answered yes, no, the answerer does not know, or a very simple direct explanation given as to why he cannot answer, such as in the case of privilege.'" *IBEW v. Star-Lo Elec.*, No. 08-900, 2010 WL 11530624, at *9 (D.N.J. Mar. 1, 2010) (quoting *United Coal Cos. v. Powell Constr. Co.*, 839 F.3d 958, 968 (3d Cir. 1998)) (internal citations omitted). Courts have differentiated requests for admission from "discovery tools under the Federal Rules." *Holtzman as Trs. of Elizabeth McManus Holtzman Irrevocable Tr. v. Philadelphia Museum of Art*, No. 22-122, 2025 WL 1289149, at *1 (E.D. Pa. Feb. 26, 2025). *See also RLA Marketing Inc. v. WHAM-O Inc.*, No. 04-3442, 2007 WL 766351, at *3 (D.N.J. Mar. 7, 2007) ("While Rule 26(a)(5) of the Federal Rules of Civil Procedure expressly states that requests for admissions is a method to discover additional information this Court recognizes there is nothing in our rules, nor in this Circuit's case law that specifically defines Requests for Admissions as discovery. . . . 'That is what Rule 36 was intended to do-narrow the issues for trial, or even altogether obviate the need for trial.'") (quoting *Langer v. Monarch Life Ins. Co.*, 966 F.2d 786, 803 (3d Cir. 1992)).

On the other hand, "[g]iven the unique nature of requests for admission within federal civil litigation, it is outside the power of a court to judge the sufficiency of a party's response by evaluating whether the available evidence suggests that the fact at issue is indeed true." *Holtzman as Trs. of Elizabeth McManus Holtzman Irrevocable Tr.*, 2025 WL 1289149, at *2. A "responding party . . . cannot give lack of information or knowledge as a reason for failure to admit or deny unless 'the party states that it is has made reasonable inquiry and that the information it knows or can readily obtain is insufficient to enable it to admit it or deny.'" *Inventio AG v. Thyssenkrupp Elevator Ams. Corp.*, No. 08-874, 2013 WL 12133902, at *1 (D.

Del. July 29, 2013) (quoting Fed. R. Civ. P. 36(a)(4)). "The revised rule requires only that the answering party make reasonable inquiry and secure such knowledge and information as are readily obtainable by him . . . Rule 36 requires only that the party state that he has taken these steps." *Id.* at *2.

That means that Rule 36(a)(6) does not empower this Court to require the responding party to supply an amended or different answer merely because the requesting party contends the answer is false or insufficient. *Inventio AG*, 2013 WL 12133902, at *2 (quoting *VeroBlue Farms USA Inc. v. Wulf*, 345 F.R.D. 406, 427 (N.D. Tex. 2021)) (emphasis added). But there is a difference between an answer with which the requesting party merely disagrees, and an answer that is plainly evasive or overly vague. "Answers that appear to be non-specific, evasive, ambiguous and appear to go to the accuracy of the requested admissions rather than the 'essential truth' contained therein are impermissible and must be amended." *United States v. Lorenzo*, No. 89-6933, 1990 WL 83388, at *1 (E.D. Pa. Jun 14, 1990). That is because when the answering party plainly knows or, through the exercise of reasonable diligence should know, the answer, but instead denies knowledge or provides a response akin to "we leave the defendant to its proofs, such a response frustrates the purpose of Rule 36. In addition to being a discovery tool, Rule 36 seeks to narrow the issues for trial by ensuring "that the party securing the admissions may rely on their binding effect." *See also Baker v. Potter,* 212 FRD 8, 8-9 (D.D.C. 2002) (citing *Rainbolt v. Johnson*, 669 F.2d 767, 768 (D.C. Cir. 1981)). As the *Baker* court noted, "this effect is intentional: if it were otherwise, the party that obtained the admission could not safely void the expense of preparing to prove the very matters on which he has secured the admission, and the purposes of the rule [would be] defeated." *Id.* at 9 (quoting Fed. R. Civ. P. 36 Advisory Committee notes).

When the Court concludes that the responding party has failed to take reasonable steps, or make a reasonable inquiry, in order to provide a concrete response, "the court may order either that the matter is admitted or that an amended answer be served." *Smith v. City of Bayonne,* No. 17-4831*,* 2026 WL 1878816, at *5 (D.N.J. June 30, 2026). For the reasons set forth below, the Court concludes that certain of Clean-Tex's responses are insufficient and must be amended. The Court denies Jensen's request to deem admitted the RFAs for which Clean-Tex served an inadequate response. A trial is, fundamentally, a search for the truth. Deeming a request as admitted should be reserved for situations when the answering party has made either no effort whatsoever to respond to the requests, or manifestly has not exercised reasonable diligence in responding and allowing amendment or withdrawal would prejudice the requesting party. *Compare* Fed. R. Civ. P. 36(a)(3) (deeming a request admitted if the opposing party does not respond to it within 30 days), *with* Fed. R. Civ. P. 36(b) (permitting the court discretion, subject to Federal Rule of Civil Procedure 16(e), to allow the admission of a request "if it would promote the presentation of the merits of the action and if the court is not persuaded that it would prejudice the requesting party in maintaining or defending the action on the merits."). *Shelton v. Fast Advance Funding, LLC*, 805 F. App'x 156, 158-59 (3d Cir. 2020) ("Matters deemed admitted due to a party's failure to respond to requests for admission are conclusively established . . . ."); *O'Campo v. Hardisty*, 262 F.2d 621, 623 (9th Cir. 1958) ("[P]laintiff, by her failure to answer the request for admissions as required by the rule, admitted the truth of all the matters contained in the request for admissions."). The Advisory Committee Notes to the 1970 Amendment to Rule

36(b) are instructive. They state in pertinent part: "Provision is made for withdrawal or amendment of an admission. This provision emphasizes the importance of having the action resolved on the merits, while at the same time assuring each party that justified reliance on an admission in preparation for trial will not operate to his prejudice." That is consistent with the clear preference of the Third Circuit, and courts in this district, that actions be disposed of on their merits whenever possible. *See Hritz v. Woma Corp.,* 732 F.2d 1178, 1181 (3d Cir. 1984) ("[W]e have repeatedly stated our preference that cases be disposed of on the merits whenever practicable.").

In this case, the Court is persuaded that Clean-Tex made a good-faith effort to respond to the RFAs. It responded to Jensen's requests, purports to have conducted a reasonable inquiry into those requests for which it did not know the answer, and met and conferred with Jensen's counsel before the parties brought the dispute to the Court. In fact, as set forth below, the Court agrees with Clean-Tex that certain of its contested answers were adequate. Accordingly, the Court will not, at this time, deem the infirm answers to be admitted.

**B. Analysis**

The Court now turns to the disputed RFAs.

**RFAs 4 & 5**

These requests ask Clean-Tex regarding whether (1) Michael Kahan, the former Chief Financial Officer of Clean-Tex, had authority to sign checks on behalf of 673 South 21st Street Urban Renewal LLC ("673 South 21st Street"), which Jensen contends was a Clean-Tex affiliate, and (2) whether the $5,551,0000 estimated cost of rehabilitating a warehouse that 673 South 21st Street owned was accurate. In response to both RFAs, Clean-Tex responded that it did not know the answer. Clean-Tex represents that it reached that response after it inquired with "various representatives regarding these requests." Joint Letter at 9.

Clean-Tex shall amend its responses to these RFAs. It might be that Clean-Tex, after conducting adequate diligence, does not know the answer. The Court is not in any position to assess the verity of the response, although it is apparent that the warehouse represented an important consideration in the project. But more important to this dispute, the Court is not in any position to assess the adequacy of Clean-Tex's inquiry in formulating its response. That is because Clean-Tex did not disclose those representatives with whom it checked in either the response to the RFA nor in the joint letter.

**RFAs 6 & 8**

These requests ask about whether YK Group and contractors performed any work on the warehouse rehabilitation between November 12, 2019 and March 15, 2020. The Court shares Jensen's skepticism that Clean-Tex lacks any knowledge of whether YK Group or its contractors performed work on the warehouse rehabilitation during that five-month period. As with RFAs 4 and 5, Clean-Tex responded that it did not know the answers after checking with "various

representatives[,]" but did not identify those representatives. As with RFAs 4 and 5, Clean-Tex will amend its answer.

**RFAs 10 & 12**

These requests ask Clean-Tex whether it responded to a May 31, 2019 Project Status Update and a June 14, 2019 Project Status Update. Clean-Tex professed not to know the answers.

Clean-Tex's responses are plainly inadequate, and it shall amend its answers to these RFAs. A reasonably diligent search of Clean-Tex's own records should enable it to admit or deny these RFAs. In the Joint Letter, Clean-Tex responds that because it and Jensen "have the same document production, so if Jensen did not find any document responsive to this, evidencing an answer, then Clean-Tex also would not have a document evidencing an answer." Joint Letter at 10. That position is meritless for two reasons. First, it is irreconcilable with claiming not to know the answer. Second, it is merely a variant of "we leave Jensen to its proofs" and is invalid under Rule 36. *Lorenzo*, 1990 WL 83388, at *1 (E.D. Pa. Jun 14, 1990). As noted above, a purpose of RFAs is to narrow the issues for trial. *RLA Marketing Inc.*, 2007 WL 766351, at *3 (quoting *Langer*, 966 F.2d at 803); *Baker,* 212 FRD at 8-9.

**RFA 13**

After Clean-Tex informed Jensen that the latter was terminating the agreement in July 2020, the President of Jensen wrote Clean-Tex a letter ("Nield Letter") asserting a balance that Clean-Tex owed to Jensen. RFA 13 asks Clean-Tex to admit that the dollar amount stated in the Nield Letter was accurate. Curiously, RFA 13 also purports to direct Clean-Tex to answer an interrogatory if Clean-Tex denies the accuracy of the amount in the Nield Letter. Clean-Tex claimed to not know the answer to RFA 13, and pointed out that "[t]his is not an interrogatory." After claiming to "inquire with various representatives[,]" Clean-Tex claimed not to know the answer.

Clean-Tex shall amend its answer. It is not unreasonable to wonder whether a more concrete response to RFA 13 is readily discernible from Clean-Tex's own records. Clean-Tex vaguely states that it checked with representatives, but makes no mention of whether those representatives themselves checked the records.

On the other hand, the Court strikes Jensen's tag-along interrogatory. As the foregoing procedural history makes clear, the fact-discovery deadlines have passed, and Jensen has had ample opportunity conduct written discovery and depose witnesses on this issue. Therefore, the utility of the requests for admissions at this stage is limited to narrowing down the issues for dispositive-motion practice and trial, not to conduct discovery anew. Beyond that, if Jensen proves at trial a fact that Clean-Tex improperly refused to admit, it has an avenue to post-trial relief pursuant to Federal Rule of Civil Procedure 37(c). *Holtzman*, 2025 WL 1289149, at *4 n.3; Rule 37, Advisory Comm. Notes to 1970 Amendment.

**RFA 16**

RFA 16 asks Clean-Tex to admit that no document required Jensen to begin manufacturing the subject equipment by a specific date. It also asks Clean-Tex to produce any document to the contrary. Once again, after purporting to "inquire[] with various representatives[,]" Clean-Tex claimed not to know the answer.

Clean-Tex shall amend its answer. Jensen persuasively argues that this is a simple question about a written agreement to which it and Clean-Tex were parties, and either the document had a deadline to begin manufacturing or it did not (Jensen maintains there was no such deadline). In the Joint Letter, Clean-Tex makes no argument to the contrary. As such, it is reasonable to expect that with a diligent inquiry, Clean-Tex should be capable of providing a more definitive response.

**RFAs 17-18**

These requests inquire about Clean-Tex's understanding of "start date" and the feasibility of that start date based on a January 8, 2020 email. Clean-Tex professes not to know the answer, and objects that these requests call for an opinion response, based on a 1970 New Jersey Superior Court case that interpreted N.J. Ct. R. 4:22-1, not Rule 36. *See* Joint Letter at 11 (citing *Van Langen v. Chadwick*, 173 N.J. Super. 517 (Law Div. 1970)). The Court will not require Clean-Tex to amend its answer. RFAs 17 and 18 are vague and more akin to interrogatories than requests to admit under Rule 36. They call for Clean-Tex to reduce to an admission or denial matters of contract interpretation that are better left to the discovery process that the parties have already completed.

**RFAs 22-24**

These requests probe matters concerning asbestos remediation of the warehouse, for which Clean-Tex hired a contractor. RFA 22 asks whether before July 7, 2020, a federal, state or local government agency inspected the warehouse to determine if the remediation was complete. RFA 23 asks whether, before March 15, 2020, a certificate of occupancy was issued for the warehouse. RFA 24 asks whether before July 7, 2020, a certificate of occupancy was issued for the warehouse. This information is probative of which, if any party, was responsible for delay in the completion of the warehouse rehabilitation. Despite hiring the remediation contractor, and purporting to have "inquired with various representatives about these requests[,]" Clean-Tex purports not to know any of the answers. Clean-Tex also implausibly, and without any explanation, contends these RFAs are an impermissible fact-finding device.

Clean-Tex will amend its answers. It is reasonable to anticipate that Clean-Tex, as the party that hired the remediation contractor, might know whether and when a government agency inspected the remediation and issued a certificate of occupancy. It is equally reasonable to expect that a search of Clean-Tex's records would reveal information sufficient to answer these RFAs more definitively.

## III. CONCLUSION AND ORDER

For the reasons set forth above, and for good cause shown,

IT IS on this 31st day of August 2026,

ORDERED THAT:

1. Clean-Tex will amend its answers to RFAs 4-5, 6, 8, 10, 12, 13, 16, and 22-24 on or before **September 14, 2026.**

2. The parties will meet and confer on a jointly proposed Amended Scheduling Order, in view of the Court's directions in footnote 1, above, and submit same to the Court by **September 14, 2026.**

SO ORDERED.

*s/ Michael A. Hammer*
**Hon. Michael A. Hammer**
**United States Magistrate Judge**